IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BONNIE GEE                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 4:07CV87-P-B

VIKING RANGE CORPORATION                                      DEFENDANT

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF VIKING RANGE
CORPORATION'S RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S BREACH OF WARRANTY CLAIMS**

---

Brooks Eason (MB# 3214)
David P. Webb (MB# 7052)
Scott W. Pedigo (MB# 10735)
Eric W. Hospodor (MB# 102041)
BAKER, DONELSON, BEARMAN
  CALDWELL & BERKOWITZ, P.C.
4268 I-55 North
P.O. Box 14167
Jackson, MS 39236
(601) 351-2400
(601) 351-2424

COUNSEL FOR DEFENDANT, VIKING
RANGE CORPORATION

# TABLE OF CONTENTS

STATEMENT OF THE CASE...............................................................................................1

    I.      Nature of the Case..................................................................................................1

    II.     Course of Proceedings. .........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

    I.      Gee's Factual Allegations. ....................................................................................2

    II.     Gee's Claims. ........................................................................................................4

SUMMARY OF THE ARGUMENT ...................................................................................5

ARGUMENT .......................................................................................................................6

    I.      Standard of Review.................................................................................................6

    II.     Gee Cannot State a Claim for Breach of Warranty for an Alleged Leaking
            Refrigerator Because Viking Cured the Non-Conformity As Entitled
            Under Its Express Warranty and the Law. ....................................................6

    III.    Gee's Warranty Claims To Recover Energy Costs Are Pre-empted. ...................11

         A.     Gee's Attempt to Recast Her Breach of Warranty Claims. .......................11

         B.     The Purpose and Scope of the EPCA. ......................................................12

         C.     Pre-emption of Gee's Warranty Claims Under 42 U.S.C. § 6297(g). ........14

CONCLUSION...................................................................................................................16

## STATEMENT OF THE CASE

### I.    Nature of the Case.

Bonnie Gee asserts breach of warranty claims because her refrigerator allegedly uses more energy than disclosed on a federally mandated energy efficiency label.  Federal law, however, pre-empts such claims.  In an effort to avoid pre-emption, Gee attempts to recast her claims as claims for a leaking refrigerator.  Gee admits, however, that her refrigerator does not leak, because Viking corrected this alleged non-conformity.  Gee's complaint is not that her refrigerator leaks, but that it uses too much energy.  Permitting Gee's breach of warranty claims to proceed would contradict the express provisions of the Energy Policy and Conservation Act. The claims are pre-empted and should be dismissed.

### II.    Course of Proceedings.

Gee filed this present action against Viking on May 25, 2007, asserting three state law claims against Viking arising out of the purchase and sale of a 48-inch side-by-side refrigerator-freezer.  Gee also seeks certification of a class action consisting of all persons who purchased one of eight different models of Viking refrigerator-freezer models manufactured by Viking from May 25, 2001, to the present.  (Complaint, ¶ 1.)

Viking answered the Complaint on July 27, 2007, denying Gee's allegations.  The Court later entered an amended Case Management Order on September 25, 2007, and ordered the parties to complete discovery relating to the class certification issue no later than February 29, 2008.  The parties have agreed that an extension of this deadline is necessary.  Therefore, the parties will request an appropriate extension of this deadline in the near future.

Viking now files its Motion to Dismiss Gee's Breach of Warranty Claims and submits this Memorandum of Authorities in support of its Motion.

1

## STATEMENT OF FACTS

### I.    Gee's Factual Allegations.

Gee, a New Jersey resident, alleges that she purchased a defective Viking 48-inch side-by-side refrigerator-freezer in May, 2006.  (Complaint, ¶¶ 4, 16.)  Gee alleges her refrigerator was defective because it leaked water a few weeks after her purchase.  According to Gee, the automatic defrost feature defrosted ice more quickly than the resulting water evaporated, leading to an overflow of water from the refrigerator's drain pan.  (Complaint, ¶¶ 1, 14, 15.)  Gee alleges that she contacted an authorized Viking repair service who identified and corrected the problem "within minutes" by installing a small electric heater component that increased evaporation from the pan.  (Complaint, ¶ 15.)  This corrective action complied with the express warranty that accompanied the refrigerator, which provides:

> Built-in refrigerators/freezers and all of their components and accessories, . . .  are warrantied to be free from defects in material or workmanship under normal household use for a period of two (2) years from the date of original retail purchase.  Viking Range Corporation, warrantor, *agrees to repair or replace*, at its option, any part which fails or is found to be defective during the warranty period.[1]

(Warranty, Exh. "A" (emphasis added).)[2]  Despite Viking's prompt correction of the problem, Gee filed the present suit months later -- not because her refrigerator leaks, but because it

---

[1] Viking's warranty is referred to as a "repair or replace" warranty.  "A 'repair and replace' warranty is an express warranty that the promise to repair will be honored and . . . that if a product fails or becomes defective, the seller or manufacturer will repair or replace within a stated period." Progressive Ins. Co. v. Monaco Coach Corp., 2006 WL 839520, *4 (S.D. Miss. March 29, 2006).

[2] When matters outside the complaint are considered, a motion to dismiss is generally converted into one for summary judgment.  See Murphy v. Inexco Oil Co., 611 F.2d 570, 573 (5th Cir. 1980).  However, in the Fifth Circuit, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993); see also, Kane Enters. v. MacGregor, Inc., 322 F.3d 371, 374 (5th Cir. 2003); Johnston v. One America Prods., Inc., 2007 WL 2433927, Civ. Action No. 2:07cv042-P-B, slip op. at *3 (N.D. Miss., Aug. 22, 2007) (citing Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) and finding DVD attached by defendants to their motion to dismiss did not convert the motion to a summary judgment motion); Progressive Ins. Co. v. Monaco Coach Corp., 2006 WL 839520, Civil Action No. 1:05cv37-DMR-JMR at *1 (S.D. Miss. March 29,

allegedly uses more energy than disclosed on the energy efficiency label affixed to the refrigerator as required under the Energy Policy and Conservation Act, 42 U.S.C. § 6291 *et seq.* (the "EPCA").

According to Gee, the repairman and a Viking representative told her that the problem she experienced was common and that Viking did not incorporate the heater at the factory because it would increase the energy used by the refrigerator and lower its energy efficiency rating.  (Complaint, ¶¶ 15-16.)  Therefore, Gee claims that Viking improperly failed to include information related to the component on a federally mandated energy label on the refrigerator regarding energy use and cost.  (Complaint, ¶ 18 (citing 42 U.S.C. § 6302).)

In support of her damages claims, Gee alleges that refrigerators that use less energy command a higher price and also that she must pay additional energy costs over the refrigerator's lifetime.  (Complaint, ¶¶ 18, 31.)  Therefore, she seeks damages for breach of warranty and common law fraud, because her refrigerator allegedly uses more energy than disclosed on the label and because the price of her refrigerator was allegedly higher than it would have been if energy information about the heater had been disclosed on the label.  (Id.)  Finally, Gee alleges that eight different models experienced the problem and seeks to bring her claims on behalf of all purchasers of those models.  (Complaint, ¶ 19.)

---

2006) (court may consider express warranties referenced in complaint where defendant attached warranty as exhibit); Pyron v. Sara Lee Bakery, 2006 WL 2562401 Civ. Action No. 2:05cv2041-KS-JMR, at *2 (S.D. Miss. March 27, 2006) (holding where defendants attached severance plan to motion to dismiss and plan was referenced in complaint and central to the claims, attachment of plan to motion did not convert motion to dismiss into motion for summary judgment).  The warranty applicable to the refrigerator at issue in this case is specifically referenced in the Complaint and is central to the Plaintiff's breach of warranty claims against Viking.  As a result, the motion should not be converted to a motion for summary judgment.

## II.    Gee's Claims.

Gee brings two breach of warranty claims against Viking: (1) Count I: Violation of Express Warranty; and (2) Count II: Violation of Implied Warranty of Merchantability, Miss. Code Ann. Section 75-2-314.  Gee portrays both claims as claims for a leaking refrigerator.

In support of her express warranty claim, Gee alleges that Viking violated its express warranty because her refrigerator did not comply with the terms of the written warranty that accompanied the refrigerator.  (Complaint, ¶ 21.)  Gee contends that the refrigerators owned by her and putative class members were "designed in such a way that they leak water [and therefore] are not 'free from defects in material or workmanship under normal household use.'" (Id. (quoting Viking's Warranty, Exh. "A").)  Similarly, in support of her implied warranty claim, Gee alleges that Viking violated Miss. Code. Ann. § 75-2-314, because the refrigerators were not "fit for the ordinary purposes for which such goods are used," because they were "designed in such a way that they leak water."  (Complaint, ¶ 24 (quoting Miss. Code Ann. § 75-2-314(2)(c).)

Gee also brings a cause of action for common law fraud under Count III of the Complaint.  Gee supports her fraud claim with the broad, vague allegation that Viking violated the EPCA.  (Complaint, ¶¶ 26-31.)  She alleges that Viking knew the refrigerators would leak water without a heater, but did not incorporate the component, because of requirements under the EPCA.  (Id.)  If Viking incorporated the component during manufacture, according to Gee, the energy used by the refrigerators would exceed the maximum energy use permitted under the EPCA.  (Complaint, ¶ 29.)  Finally, she claims that Viking should have disclosed energy information about the heater on the federally mandated energy label on the refrigerator at the time of sale.  (Id.)

Gee's only factual allegation supporting her damages claims relates to the energy efficiency of her refrigerator. She claims that she and other members of the putative class were injured because the refrigerators allegedly commanded a higher price than if information about the heater had been disclosed on the label and because they will pay for more energy over the lifetime of the refrigerators. (Complaint, ¶ 31.)

## SUMMARY OF THE ARGUMENT

Under the Uniform Commercial Code, goods sold by a manufacturer must conform to the terms of the express or implied warranties accompanying their sale. The manufacturer, however, has an opportunity to correct any alleged non-conformity before an action for breach of warranty can be maintained. The rationale for this established principle is the law's firm policy of minimization of economic waste, which is grounded in the practical reality that absolute perfection cannot be attained, nor is it expected. Consistent with this policy, the law affords a manufacturer an opportunity to correct a non-conformity in one of its products.

This is precisely what Viking did. Gee notified Viking's authorized repair service that her refrigerator was leaking. Viking promptly serviced her refrigerator and corrected the problem. Portraying her breach of warranty claims as claims for a leaking refrigerator, Gee later filed suit complaining only that her refrigerator uses more energy than disclosed on the energy efficiency label on the refrigerator.

Gee cannot state a claim for breach of warranty for this alleged non-conformity, however, because the EPCA specifically bars claims for breach of express or implied warranty concerning the energy a refrigerator may use as disclosed on energy efficiency labels required by the Act. The Act expressly provides that any disclosure under the Act "shall not create an express or implied warranty under state or federal law that such energy efficiency will be achieved or that such energy use or estimated operating cost will not be exceeded under conditions of actual use."

5

42 U.S.C. § 6297(g). Because permitting Gee to maintain her breach of warranty claims would conflict with this unambiguous statute, the claims are pre-empted. Accordingly, the Court should dismiss Counts I and II of the Complaint with prejudice.

## ARGUMENT

### I.    Standard of Review.

For fifty years, in considering motions to dismiss pursuant to Rule 12(b)(6) courts applied the standard established in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), which provided that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Just last year, however, the Court in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1968 (2007), abrogated this standard.

Under <u>Twombly</u>, a party's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will *not* do." <u>Id</u>. at 1965 (emphasis added). "Factual allegations must be enough to raise a right to relief above the speculative level . . . [and] the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id</u>. (citations omitted). Based on this standard, Gee cannot maintain her breach of warranty claims.

### II.    Gee Cannot State a Claim for Breach of Warranty for an Alleged Leaking Refrigerator Because Viking Cured the Non-Conformity As Entitled Under Its Express Warranty and the Law.

Gee's breach of warranty claims are governed by the provisions of Article 2 of the Uniform Commercial Code, which has been adopted in both Mississippi and New Jersey without

6

any modification relevant to the present Motion.[3]  Under the U.C.C., goods must conform to the

terms of any express warranties and implied warranties accompanying the sale of the product.

Miss. Code Ann. § 75-2-301; N.J. Stat. Ann.  § 12A:2-301.  Section 2-313 governs express

warranties and provides in pertinent part:

> (a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b)  Any description of the good which is made part of the basis of the bargain creates an express warranty that the good shall conform to the description.

Miss. Code Ann.  § 75-2-313(1)(a) and (b); N.J. Stat. Ann.  § 12A:2-313(1)(a) and (b).

 In addition to any express warranties, under § 2-314, "a warranty that the good shall be

merchantable is implied in a contract for their sale if the seller is a merchant with respect to

goods of that kind."  Miss. Code Ann. § 752-2-314(1); N.J. Stat. Ann. § 12A:2-314(1).  For

goods to be merchantable, the goods must at least be goods that:

> (a)  pass without objection in the trade under the contract description; and

> (b) in the case of fungible goods, are of fair average quality within the description; and

> (c)  are fit for the ordinary purposes for which such goods are used; and

> (d)  run, within the variation permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

> (e)  are adequately contained, packaged and labeled as the agreement may require; and

---

[3] Although Gee's claim arose in New Jersey, but was filed in Mississippi, a choice of law analysis does not become necessary unless applying the law of the two jurisdictions would produce different results.  Zurich American Ins. Co. v. Goodwin, 920 So.2d 427, 432 (Miss. 2006) (citing Boardman v. United Servs. Auto. Ass'n., 470 So.2d 1024, 1038 (Miss. 1985).  Instead, a "[c]hoice of law analysis becomes necessary only when there is a true conflict between the law of two or more states, each having an interest in the litigation."  Id.; see also 63 B Am. Jur. 2D Products Liability § 1521 ("[w]here the laws of two or more jurisdictions on a particular issue are the same or would produce the identical result, there is a false conflict that obviates any necessity to determine which state's law governs a case having multi-jurisdictional aspects.")  No choice of law analysis is necessary for the resolution of the Motion, because regardless of whether Mississippi or New Jersey law is applied, Gee's breach of warranty claim should be dismissed on the grounds asserted.

     (f)  conform to the promise or affirmations of fact made on the container or label if any.

Miss. Code Ann. § 752-2-314(1)(a) and (b); N.J. Stat. Ann. § 12A:2-314(1)(a) and (b).  Gee alleges that her refrigerator did not conform to the implied warranty of merchantability because it was not "fit for the ordinary purposes for which such goods are used" as required under subsection (c).  (Complaint, ¶ 24.)

     Under both Mississippi and New Jersey law, however, the seller of a product is allowed to cure any alleged non-conformity with a warranty.  This legal principle applies to both express and implied warranties and is grounded in the established policy of the common law and the U.C.C. of minimizing economic waste as well as the reality that perfection cannot be expected and should not be required.  See Mercury Marine v. Clear River Constr. Co., Inc., 839 So. 2d 508, 512 (Miss. 2003) (discussing policy rationale of minimizing economic waste for opportunity to cure); Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783, 794 (N.J. 2005) (recognizing that perfection cannot be attained and holding that law encourages correction of non-conformities pursuant to warranties in context of claims under consumer fraud act).  The right to cure is incorporated in the U.C.C. in multiple places, and courts have judicially recognized this right even where the U.C.C. does not expressly incorporate it.  See Mercury Marine, 839 So.2d at 515; Palmucci v. Brunswick Corp., 710 A.2d 1045 (N.J. Super. 1998).

     For example, if a product is tendered for delivery and is rejected because of a non-conformity, § 2-508 of the U.C.C. specifically provides the seller a reasonable opportunity to cure the non-conformity.  Miss. Code Ann. § 75-2-508(1); N.J. Stat. Ann. § 12A:2-508(1).  In addition, after a buyer has accepted a product and later learns of a non-conformity, the buyer is barred from filing suit unless the buyer notifies the seller thereby promoting compromise and giving the seller an opportunity to correct the non-conformity.  C.R. Daniels, Inc. v. Yazoo Mfg.

8

Co., 641 F. Supp. 205 (S.D. Miss. 1986); Miss. Code Ann. § 75-2-607(3)(1); N.J. Stat. Ann. § 12A2-607(3)(1).  The Mississippi Supreme Court recently reinforced the right to cure in Mercury Marine, 839 So. 2d at 508.

        In Mercury Marine, a set of boat motors sold to the plaintiff malfunctioned three times in ten months.  Id. At 510-11.  The plaintiff returned the motors the first two times and had them repaired under Mercury Marine's express "repair or replace" warranty.  Id.  When the motors malfunction the third time, however, the plaintiff did not return them for repair and instead bought replacement motors.  Id.  The plaintiff later sued Mercury Marine for breach of express warranty and breach of the implied warranties of merchantability and fitness for a particular purpose.  Id.  The plaintiff sought to recover the replacement costs of the motors and incidental and consequential damages caused by the malfunction of the motors.  Id.  On appeal from a judgment entered in favor of the plaintiff, the Mississippi Supreme Court reversed and rendered. Id. at 515.

        In reaching its holding, the Court held that the failure to provide an opportunity to cure foreclosed any action by the buyer for breach of express warranty or breach of implied warranty. Id. at 512-15.  Therefore, the plaintiff was not entitled to revoke his acceptance of the motors under § 75-2-608.  Id.  In addition, the plaintiff was not entitled to bring suit for incidental or consequential damages allegedly incurred as a result of the engine's malfunction.  Id. Importantly, the Court held that there had been no breach of warranty because Mercury Marine had the right to cure the non-conformity.  Id. at 515.  Because of the strong policy of minimizing economic waste, the Court recognized this right even though the express language of § 75-2-608

9

does not expressly provide a right to cure.[4]    The Court, citing <u>Fitzner v. Pontiac-Buick-Cadillac,</u>

<u>Inc</u>., 523 So. 2d 324 (Miss. 1988), specifically held:

> We recognize that a strict reading of the cure provisions of Miss. Code Ann. § 75-2-508 (1972) reveals no explicit application to the revocation situation with which we are here concerned.  *The law's policy of minimization of economic waste strongly supports recognition of a reasonable opportunity to cure.*  Though the express language of Section 75-2-508 does not apply here, cure is not excluded by Section 75-2-608.  By analogy to Section 75-2-508 and in furtherance of the policy justification undergirding that statute and our common law doctrine of cure in contracts generally, we recognize that, before Smith was entitled to get his money back, Fitzner had a right to a reasonable opportunity to cure the vehicle's deficiencies.

<u>Id.</u> at 514.  (emphasis in original) (citations omitted); <u>see also</u> <u>Fitzner</u>, 523 So. 2d at 328

(reversing trial court and holding that buyer could not bring suit without giving seller

opportunity to cure defect); <u>Tucker v. Aqua Yacht Harbor Corp.</u>, 749 F. Supp. 142, 147 (N.D.

Miss. 1990) (holding manufacturer was not liable for breach of express and implied warranties

where plaintiff sued while manufacturer was in the process of making repairs that resulted in the

proper functioning of engines because manufacturer was not afforded a reasonable opportunity to

cure defect prior to plaintiff bringing suit).

Similarly, New Jersey courts recognize a right to cure even where the U.C.C. does not

expressly provide such a right.  <u>See</u> <u>Palmucci</u>, 710 A.2d at 1047.  In <u>Palmucci</u>, the plaintiff

bought a boat motor, which experienced problems after a few hours of use.  Under the motor's

express warranty, the defendant manufacturer, Brunswick, had the option to repair the motor or

replace any defective parts.  <u>Id.</u>  Like the plaintiff in <u>Mercury Marine</u>, however, the plaintiff did

not provide the seller an opportunity to cure the problem.  Instead, the plaintiff demanded a new

motor or a refund and later filed suit.  <u>Id.</u>  The trial court entered a directed verdict against the

---

[4] The Court also noted that the same prerequisite to recovery is present under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(e) (2002) (stating "No action . . . may be brought . . . unless the person obligated under the warranty . . . is afforded a reasonable opportunity to cure such failure to comply.").

plaintiff, and the plaintiff appealed.  On appeal, the appellate court affirmed, holding that the seller should have had the opportunity to cure the alleged defect despite the fact that "the U.C.C. does not explicitly require a buyer of a defective product to allow a seller to 'cure' the defect in a product after the buyer has accepted it."  Id.  The court reasoned that because the seller's warranty gave it the option to repair or replace defective parts, the plaintiff was barred from filing suit unless it provided the seller with an opportunity to cure the alleged defect.  Id. at 1047-49.  Because the plaintiff had not, the seller was entitled to a directed verdict on the breach of warranty claims.  Id.

As the purported basis for her breach of warranty claims in the present case, Gee alleges that Viking breached the express warranty and the implied warranty of merchantability because her refrigerator leaked water.  (Complaint at ¶¶ 20-22.)  By her own admission, however, Viking promptly cured the non-conformity.  Consequently, Viking complied with its express warranty. Also, as a result of Viking's cure, the refrigerator is indisputably "fit for the ordinary purposes for which [the refrigerator is] used."  Miss Code Ann. § 75-2-314(2)(c); N.J. Stat. Ann. § 12A:2-314(2)(c).  Therefore, there is no breach of any express or implied warranty, because Viking promptly cured the non-conformity just as it was entitled to do under its express warranty, Mississippi law and New Jersey law.

### III.    Gee's Warranty Claims To Recover Energy Costs Are Pre-empted.

#### A.    Gee's Attempt to Recast Her Breach of Warranty Claims.

Although Viking promptly cured the non-conformity of her refrigerator, Gee later filed suit and alleged breach of warranty claims.  Importantly, however, the only non-conformity Gee alleges is that her refrigerator uses more energy than was disclosed on the energy label. (Complaint, ¶¶ 15, 18.)  Despite this, Gee portrays her breach of warranty claims as claims seeking to recover damages caused by the leaking of water as opposed to the refrigerator's

11

energy efficiency.  In other words, Gee attempts to portray her warranty claims for the energy efficiency of her refrigerator as claims for a refrigerator that leaked water.  Gee attempts to recast her claims in this manner, because the express provisions of the EPCA foreclose her energy efficiency claims.  Regardless of Gee's artful pleading, Gee's warranty claims are pre-empted.

### B.    The Purpose and Scope of the EPCA.

Congress enacted the EPCA in 1975 in response to the oil embargo other countries imposed against the United States.  Natural Resources Def. Counsel v. Herrington, 768 F.2d 1355, 1364 (D.C. Cir. 1985).  With the EPCA, Congress established a comprehensive energy conservation program to reduce energy usage in the United States.  See S. Rep. No. 94-516, at 517 (1975), reprinted in 1975 U.S.C.C.A.N. 1956, 1957.  One measure employed by Congress was energy efficiency testing and labeling of major home appliances.  See Id.; Energy Policy and Conservation Act, Tit. III, Pt. B, 89 Stat. 871 (1975) (codified as amended at 42 U.S.C. §§ 6291-6309).  Congress also authorized the creation of energy efficiency requirements.  Id.

Under the EPCA, as subsequently amended, Congress required the Secretary of the Department of Energy (the "DOE") to establish energy use test procedures applicable to products covered by the Act, which include refrigerators-freezers.  Under the regulations promulgated by the DOE, refrigerator-freezer manufacturers are required to test the energy use of their products in a specific manner tailored to each type of product and administered under certain specified ambient and operating conditions.  See 42 U.S.C. § 6293; 10 C.F.R. Pt. 430, §430.23, App. A1 (establishing energy testing requirements and procedures for consumer appliances, including procedures specific to various types of refrigerators-freezers).  Congress also imposed maximum energy use requirements for covered products, including refrigerators-freezers.  42 U.S.C. § 6295 (imposing maximum energy use requirements).

In addition, Congress directed the Federal Trade Commission (the "FTC") to develop rules requiring labels that disclose the estimated annual operating cost of covered products as determined by the test procedures.  See 42 U.S.C. § 6294; see also 16 C.F.R. Pt. 305 (establishing energy labeling and disclosure requirements for consumer appliances).  Therefore, pursuant to these provisions, all refrigerator manufacturers are required to disclose the estimated annual energy use and operating costs of their products as determined by the test procedures under 10 C.F.R. Part 430 and its appendices by affixing a label to their products that complies with uniform requirements pertaining to the form and content of the label.  See 16 C.F.R. § 305.11.

Congress also specifically addressed the effect of these provisions on other law under § 6297.  First, § 6297(a) provides that the EPCA supersedes any state law concerning the disclosure of energy information if the state law imposes energy testing, energy measures, or disclosure requirements other than those established under the Act.  See 42 U.S.C. §6297(a)(1). In addition, § 6297(b)-(d), as amended, provides that no state requirement "concerning energy efficiency [or] energy use of . . . covered products shall be effective" unless the law meets one or more of several narrow exceptions, none of which are relevant to this case.  See 42 U.S.C. § 6297(b)–(d).  Although these provisions of § 6297 are not at issue in the present Motion, they illustrate the purpose and objective of Congress with respect to the energy use and efficiency of covered consumer appliances.

In enacting these provisions, Congress intended to create a uniform, federally controlled scheme of energy use and efficiency requirements, testing procedures, and labeling requirements to the exclusion of conflicting state laws.  See Air Conditioning and Refrigeration Inst. v. Energy Resources Conservation & Dev. Comm'n, 410 F.3d 492, 496-500 (9th Cir. 2005) (explaining

13

history and scope of the ECPA). In doing so, Congress also addressed the potential for warranty claims based on the energy efficiency of covered products and specifically foreclosed them. See 42 U.S.C. § 6297(g). Under § 6297(g), there is no warranty, express or implied, as to the energy use or energy costs of operating appliances as determined and disclosed by a manufacturer pursuant to the Act. Specifically, § 6297(g) provides:

**(g) No warranty**

Any disclosure with respect to energy use, energy efficiency, or estimated annual operating cost which is required to be made under the provisions of this part, *shall not create an express or implied warranty under State or Federal law that such energy efficiency will be achieved or that such energy use or estimated annual operating cost will not be exceeded under conditions of actual use.*

Id. (emphasis added). As a result of this provision, any state law claim that a covered product uses more energy than disclosed pursuant to the Act is pre-empted. Importantly, Gee's breach of warranty claims for energy costs are pre-empted regardless of the manner in which she attempts to plead them.

### C.    Pre-emption of Gee's Warranty Claims Under 42 U.S.C. § 6297(g).

Under the Supremacy Clause of the Constitution, pre-emption occurs either where Congress expressly pre-empts state law or where federal law implicitly overrides state law. See Freightliner Corp. v. Myrick, 115 S.Ct. 1483, 1487 (1985). A federal statute implicitly overrides state law when there is an actual conflict between the two. See Freightliner Corp., 115 S.Ct. at 1487. If it is impossible to comply with both state and federal law, or if the application of state law in a particular case "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," the state law is pre-empted and invalid. Id. (quoting Hines v. Davidowitz, 61 S.Ct. 399, 404 (1941)). The Supreme Court has specifically explained that implied conflict pre-emption exists if such an obstacle is found "whether that 'obstacle' goes by the name of 'conflicting; contrary to; . . . repugnance; difference; irreconcilability;

14

inconsistency; violation; curtailment; . . . interference' or the like." <u>Geier v. American Honda Motor Co., Inc.</u>, 120 S.Ct. 1913, 1921 (2000) (quoting <u>Hines v. Davidowitz</u>, 61 S.Ct. 399 (1941)).  In other words, if any "conflict" is found between state and federal law, the "conflicting state law is 'nullified' by the Supremacy Clause" and is "without effect." <u>Geier</u>, 120 S.Ct at 1921-1922; <u>Cipallone v. Liggett Group, Inc.</u>; 112 S.Ct. 2608 (1992).

Importantly, pre-emption applies not only to conflicting state statutes or regulations, but also to common law claims for damages.  <u>See</u> <u>Geier</u>, 120 S.Ct at 1919; <u>Cipallone</u>, 112 S.Ct. at 2620.  Because common law claims are premised on the existence of a legal duty, they are pre-empted when the implicit duty imposed through a common law rule contradicts federal law.  <u>See</u> <u>Geier</u>, 120 S.Ct. at 1919-20; <u>Cipallone</u>, 112 S.Ct. at 2620 (holding damage claims against cigarette manufacturer were pre-empted by federal statute barring states from imposing "restrictions or prohibitions" concerning smoking and health with respect to advertising or promotion of cigarettes because the recognition of a legal duty underlying the claims constituted a "restriction or prohibition" barred by federal law).

Under these established principles, Gee's breach of warranty claims are clearly pre-empted.  Gee's refrigerator does not leak.  She brings breach of warranty claims because her refrigerator allegedly uses more energy than disclosed on the energy efficiency label. (Complaint, ¶¶ 1, 17-18.)  Specifically, Gee alleges:

> [S]ome or all of the Refrigerator units covered by this suit would have exceeded the maximum energy use standards promulgated by the Secretary of Energy if they had been fitted with the Heating Unit prior to shipment from the factory.
>
> * * *
>
> [T]he labels affixed to the Viking Refrigerators at issue in this suit provided information about energy usage and estimated yearly operating costs which did *not* include the energy usage or cost associated with running the Heating Unit, nor did the labels explain that the energy usage for the Refrigerators would be higher if all parts needed to prevent the Refrigerator from leaking were installed.

15

(Id.)

These allegations are clear.  Gee seeks damages because her refrigerator allegedly uses more energy than the label said it would.  Under § 6297(g), however, there is no warranty that the disclosed "energy efficiency will be achieved or that [the] energy use or estimated annual operating cost will not be exceeded under conditions of actual use."  42 U.S.C. § 6297(g).  Permitting Gee's breach of warranty claims to recover for the energy efficiency of her refrigerator would do precisely what the EPCA prohibits – it would impose a warranty with respect to the energy use, energy efficiency, and operating cost of the refrigerator as determined and disclosed pursuant to the EPCA.  Her warranty claims are pre-empted and should be dismissed.

## CONCLUSION

Gee's Complaint is a classic example of a pleading that the Supreme Court in Twombly held is insufficient to maintain a claim.  When the artificial "labels and conclusions" and "formulaic recitation of the elements" of Gee's breach of warranty claims are peeled away, and the law is applied to her underlying factual allegations, it is clear that the claims should be dismissed.

Under the U.C.C. and applicable case law, manufacturers are obligated to deliver goods that conform to the express and implied warranties that accompany a sale, but the law also provides manufacturers the opportunity to cure alleged non-conformities that may exist.  Viking did just that.  Gee cannot state a claim for a non-conformity that no longer exists.

Under the EPCA, manufacturers are required to test their products according to specific testing procedures and disclose the results with labels complying with the requirements of the EPCA and its accompanying regulations.  By Congressional mandate, however, a purchaser cannot assert an express or implied breach of warranty claim if the energy use of a product

16

exceeds the estimate on the label.  Permitting Gee to maintain her breach of warranty claims would plainly conflict with the EPCA and would serve as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." <u>Freightliner Corp.</u>, 115 S.Ct. at 1487.  Indeed, Gee seeks to create the precise warranties that the EPCA establishes she cannot.

Whether Gee may recover on any other claim is an issue for another day, but it is clear that she has failed to state claims for breach of warranty upon which relief may be granted. Gee's breach of warranty claims should be dismissed.

This the 15th day of February, 2008.

Respectfully submitted,

VIKING RANGE CORPORATION

By Its Attorneys,

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.

By: s/Scott W. Pedigo_____
     SCOTT W. PEDIGO

Brooks Eason (MB #5286)
David P. Webb (MB #7052)
Scott W. Pedigo (MB #10735)
Eric W. Hospodor (MB #102041)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park (39211)
P. O. Box 14167
Jackson, Mississippi 39236
Telephone:  (601) 351-2400
Facsimile:   (601) 351-2424

JM EWH 508520 v6
2903102-000078 2/15/2008

**CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the foregoing Memorandum of

Authorities with the Clerk of the Court using the ECF system which will send notification of the

filing to all counsel as listed below:

J. Cal Mayo, Jr., Esq.
cmayo@mayomallette.com

Paul Bowie Watkins, Jr., Esq.
pwatkins@mayomallette.com

Pope S. Mallette, Esq.
pmallette@mayomallette.com

Andrew M. Schatz, Esq.
Mark P. Kindall, Esq.
firm@snilaw.com

This the 15th day of February, 2008.

s/Scott W. Pedigo
SCOTT W. PEDIGO

18