IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BONNIE GEE                                                                                           PLAINTIFF

V.                                                           CIVIL ACTION NUMBER: 4:07-cv-87-P-B

VIKING RANGE CORPORATION                                                              DEFENDANT

**PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN OPPOSITION TO THE MOTION TO DISMISS PLAINTIFF'S BREACH OF WARRANTY CLAIMS**

Plaintiff Bonnie Gee ("Plaintiff"), on behalf of herself and all others similarly situated, respectfully submits this Memorandum of Authorities in Opposition to the Motion to Dismiss Plaintiff's Breach of Warranty Claims (the "Motion") filed by Defendant Viking Range Corporation ("Viking") on February 15, 2008.

**I.     Introduction.**

This case involves a scheme by Viking to sell defective refrigerators (the "Refrigerators") to the public notwithstanding Viking's knowledge of a serious design defect (a water drip). Although Viking had developed a fix before the Refrigerators were sold, Viking further knew that installing the fix in the factory, where energy usage is measured, could cause the Refrigerators to exceed the maximum energy usage permitted by federal law. As a result, if it installed the fix in the factory, Viking would not be able to sell the Refrigerators *at all*. Accordingly, Viking chose to sell the Refrigerators in a defective state.

Viking does not challenge that these well-pled allegations in Plaintiff's complaint (*i.e.*, that Viking knew of the defects when the Refrigerators were sold to the public) adequately state a claim

for common law fraud (Count III of the Complaint). Accordingly, there is no dispute that Plaintiff's fraud claim may properly proceed. Nonetheless, Viking now asks this Court to dismiss Plaintiff's express and implied warranty claims (Counts I and II of the Complaint) and hold that its egregious behavior does not violate its consumer warranties.

As discussed below, Viking's Motion to Dismiss the warranty claims in Counts I and II of the Complaint is wholly without merit. Viking's purported "willingness" to "cure" dripping Refrigerators *after* a Class Member's Refrigerator drips does not immunize it from liability for breach of warranty. Viking's argument ignores the fact that it knew about the defect *before* the Refrigerators were shipped, but decided *not* to cure the defect because the "fix" it developed would have rendered Refrigerators unfit for sale under federal energy regulations. In other words, Viking made the decision *not* to "cure" the defect then it sold the Refrigerators, despite its full knowledge of the defect and while nonetheless warranting that it was *free* of defect.

Viking's second argument – that Plaintiff's warranty claims are preempted under the federal Energy Policy and Conservation Act ("EPCA") – is also without merit. First, Viking mischaracterizes Plaintiff's warranty claims as being concerned only with the undisclosed additional energy consumption caused by the Heating Units. Contrary to Viking's argument, the gravamen of Plaintiff's warranty claims is that Viking sold the Refrigerator to Plaintiff despite being *aware* of a serious design defect. Second, EPCA is inapplicable where, as alleged by Plaintiff, the Heating Units caused Refrigerators not only to use more electricity than disclosed on the federally mandated energy efficiency label, but also to *exceed* the maximum energy consumption permitted by United States law altogether.

Accordingly, Viking's Motion should be denied in its entirety.

II.     **COUNTERSTATEMENT OF FACTS**

Throughout the Class Period, Viking knowingly sold Refrigerators that had a design defect that caused the Refrigerators to drip. ¶¶ 1, 15-18. Not only was Viking aware of the design defect, but it actually had developed a solution – a special heating unit that would evaporate the excess water (the "Heating Unit"). ¶¶ 1, 15-16. Nonetheless, Viking sold the Refrigerators *without* the additional Heating Unit, because Viking knew that pre-installation of the Heating Unit could cause the Refrigerators to exceed the maximum energy usage permitted by federal law (in addition to reducing the desirability of the Refrigerators to consumers). ¶ 17. As a result, Viking would not be able to sell those Refrigerators *at all*.

Plaintiff purchased her Viking Refrigerator in mid-May, 2006, at a purchase price of $4500. ¶ 12.[1] Plaintiff's Refrigerator, like all Refrigerators at issue in this lawsuit (as identified at ¶ 19), was "warranted to be free from defects in material or workmanship under normal household use" for two years, while the compressor, evaporator, condenser, connecting tubing and dryer/strainer were "warranted to be free from defective materials or workmanship in normal household use" for six years. ¶ 13.

However, within weeks of installation, Plaintiff's Refrigerator began to drip water on the floor of her kitchen. ¶ 14. When Plaintiff called Viking to obtain repairs, the service technician immediately identified the problem: the automatic defrost feature was defrosting so quickly that the defrost pan at the bottom of the refrigerator was filling up and overflowing. ¶ 15. The solution was to install the Heating Unit, a stock unit which took only a few minutes to install. *Id.*

---

[1] All citations to "¶__" and "¶¶__-__" are to paragraphs of the Class Action Complaint (the "Complaint").

The technician sent by Viking then informed Plaintiff that Viking had long been aware of the defect in the Refrigerators that caused the drip. *Id.* However, Viking chose not to remedy the defect at the factory by automatically installing a Heating Unit because doing so would increase the Refrigerators' energy usage. *Id*, ¶ 18. A Viking customer service representative subsequently confirmed these facts to Plaintiff over the phone. ¶ 16.

All Viking Refrigerators (like all refrigerators sold in the United States) are required by law to display a label, prior to sale, which, *inter alia,* states the energy use of the Refrigerator and its estimated yearly operating cost (the "Energy Efficiency Label"). ¶18. Installing the Heating Unit causes the Refrigerators to use more electricity than is stated on the Energy Efficiency Label. Indeed, installing the Heating Unit causes Refrigerators to *exceed* altogether the *maximum* energy usage standards promulgated by the Secretary of Energy. ¶ 18.

Plaintiff subsequently filed her class action Complaint on May 25, 2007, alleging breach of express warranty (Count I), breach of implied warranty (Count II), and common law fraud (Count III) on behalf of purchasers of Viking Refrigerators from May 25, 2001 to the present. ¶ 1. On July 27, 2007, Viking filed its Answer to the Complaint [Doc. #12]. On February 15, 2008, Viking filed the instant Motion to Dismiss.[2] Notably, Viking has *not* challenged the sufficiency of the common law fraud claim set forth in Count III of the Complaint. Nonetheless, Viking seeks this Court's approval that its alleged conduct – knowingly selling a defective product that, if properly fixed at the factory, it may not have been able to sell at all – did not violate its express and implied warranties to consumers.

---

[2] Based simply on this timeline, the Court should deny Viking's Motion as being untimely. Federal Rule of Civil Procedure 12(b) requires that motions to dismiss be filed "before pleading if a responsive pleading is allowed." Here, Viking filed its Motion nearly seven months *after* filing its Answer. The Court should deny the Motion on this basis alone.

### III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) must be denied so long as the factual allegations in a complaint, if true, are "enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 127 S.Ct. 1955, 1965 (2007). Although this standard requires more than bare "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," a court should "not require heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 1965, 1974. As this Court recently recognized, a district court must "accept[] as true those well pleaded factual allegations in the complaint," and the complaint must "be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Walls Fire Protection Dist. v. City of Horn Lake,* Civil Action No. 2:07CV228-P-A, 2008 WL 619305, at *2 (N. D. Miss. March 3, 2008) (Pepper, J.). Accordingly, "[m]otions to dismiss are viewed with disfavor and are rarely granted." *Id; c.f. Twombly,* 127 S.Ct. at 1970-74 (affirming dismissal of antitrust claim where no factual allegations whatsoever indicating existence of conspiracy or agreement.) Here, as set forth below, Plaintiff has provided more than enough factual allegations to satisfy the *Twombly* standard.

### IV. ARGUMENT

#### A. *Plaintiff Has Properly Pled Breach of Warranty Claims*

Contrary to Viking's argument, Plaintiff has properly pled that Viking breached its express and implied warranties in connection with its sale of the Refrigerators. Plaintiff expressly alleged that Viking sold the Refrigerators knowing that they had a design defect that caused the Refrigerator to drip. ¶¶ 15-16. Plaintiff has further alleged that Viking chose not to remedy this defect and include a Heating Unit in the Refrigerators (because this purported "fix" increased the energy consumption of Refrigerators to the point where they exceeded federal energy use regulations). ¶¶

17-18. These allegations adequately plead that Viking violated both its express warranty (that its Refrigerators were "free from defects in material or workmanship") (¶¶ 20-22) and the implied warranty of merchantability (that the Refrigerators were "fit for the ordinary purposes for which such goods are used") (¶¶ 23-25).

Viking incorrectly argues that it did not breach its express and implied warranties because the law provides a seller with "a reasonable opportunity to cure the non-conformity." Motion at 8. Viking argues that it cured the non-conformity because, after Plaintiff complained about the water drip, Viking installed the Heating Unit which prevented further drips.

Viking's argument is without merit. Viking ignores that it ***intentionally*** sold Plaintiff a dripping Refrigerator that it ***knew*** had a defect. As Viking acknowledges, a breach of warranty claim is proper once a seller has had a ***reasonable*** – but not unlimited – opportunity to cure a defect. *Settlemires v. Jones,* 736 So.2d 471, ¶¶7, 18 (Miss.App. 1999) (affirming finding of liability on breach of warranty claim where seller was given "a reasonable opportunity to correct the defects"); Motion at 8.[3] Here, any purported "opportunity to cure" defense is barred because Viking knew about the design defect ***before*** selling the Refrigerators, but chose ***not*** to cure the defect. It had a reasonable opportunity to fix the Refrigerators at the factory, ***before*** they were purchased by consumers. Indeed, ***each and every time*** Viking sold a defective Refrigerator, it effectively declined another opportunity to cure the defect.

Accordingly, it was wholly ***un***reasonable of Viking ***not*** to repair the known design defect at the factory. (Of course, Viking had an ulterior motive for its failure: had it "fixed" the drip defect,

---

[3]   Indeed, the cases cited by Viking similarly recognize that a seller only has a ***reasonable*** opportunity to cure deficiencies. *See Tucker v. Aqua Yacht Harbor Co.*, 749 F. Supp. 142, 145 (N.D. Miss. 1990) (seller must be afforded "reasonable opportunity to cure"); *Mercury Marine v. Clear River Const. Co.*, 839 So.2d 508, 512 (Miss. 2003) (same); *Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith*, 523 So.2d 324, 328 (Miss. 1988) (same).

some or all of the Refrigerators would have exceeded the energy use allowances promulgated by the Secretary of Energy, rendering the Refrigerators illegal to sell at all.) Indeed, as Viking acknowledges, the law's allowance for a "reasonable opportunity" to cure defects is meant to avoid "economic waste." Motion at 8. However, any "waste" here arises solely from Viking's decision knowingly to sell defective Refrigerators. Had Viking repaired the Refrigerators at the factory (or declined to sell them until a fix was developed that would not render the Refrigerators noncompliant with federal energy use law), there would be no waste at all. Instead, Viking chose to distribute the Refrigerators to thousands (or more) of consumers, all the while continuing to (falsely) warrant that the Refrigerators were "free from defects." [4]

Viking's further argument that "perfection cannot be expected and should not be required" (Motion at 8) misses the point. It may make sense to afford companies the post-sale opportunity to fix isolated manufacturing defects or other defects of which the seller was **wholly unaware**. [5]

---

[4] At a bare minimum, the question of whether Viking forewent its "reasonable opportunity" to fix the Refrigerators by failing to fix the known defect at the factory is a question of fact, which is not amenable to resolution on a motion to dismiss. *See Tucker,* 749 F. Supp. at 146-47 (recognizing that question of whether a seller had a reasonable opportunity to cure "is necessarily a flexible one," dependent upon the particularized "facts and circumstances of each case;" court granted summary judgment to defendant only after concluding the plaintiff, even after completion of discovery and depositions, had failed to demonstrate that defendant had been granted a reasonable opportunity to cure).

[5] Indeed, the cases cited by Defendants in support of their right to cure generally involve only manufacturing defects. *Tucker v. Aqua Yacht Harbor Co.*, 749 F. Supp. 142 (N.D. Miss. 1990) (apparent manufacturing defect in boat engine; no allegation of design defect); *Mercury Marine v. Clear River Const. Co.*, 839 So.2d 508 (Miss. 2003) (apparent manufacturing defect in boat engine; no allegation of design defect); *Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith*, 523 So.2d 324 (Miss. 1988) (defects in used car; no allegation of design defect); *Palmucci v. Brunswick Corp.*, 710 A.2d 1045 (N.J.Super.A.D. 1998) (apparent manufacturing defect in boat engine; no allegation of design defect). The remaining two cases cited by Viking similarly do not support its position. In *C.R. Daniels v. Yazoo Manufacturing Co., Inc.*, 641 F. Supp. 205, 210-11 (S.D. Miss. 1986), the court denied a breach of warranty claim in part because (unlike here) the manufacturer was ***not*** aware of the scope of the alleged problem until after the customer initiated litigation; nor does the opinion make clear whether the problem arose due to a design or a manufacturing defect. In *Thiedmann v. Mercedes-Benz USA, LLC,* 872 A.2d. 783, 794-96 (N.J. 2005), the court rejected plaintiff's **Consumer Fraud Act** claim due to the plaintiff's failure to adequately satisfy the technical requirements for pleading "ascertainable loss" under that Act. *Thiedmann* did not involve a breach

However, Viking's argument is meritless where, as here, Viking *knew* about the design defect *before* the Refrigerators were manufactured or sold. In that context, Plaintiff is not holding Viking to a standard of "perfection." Rather, Plaintiff is seeking to enforce the terms of the warranty that Viking (but not Plaintiff) already knew to be false at the time the Refrigerators were sold.

In any event, contrary to Viking's assertion, Viking *cannot* be said to have fixed all Refrigerators. Rather, Viking substituted one flaw (water drippage) with another (power consumption in excess of the maximum allowed under United States government regulations). Accordingly, Class Members *still* have not received properly functioning Refrigerator units. Viking should not be allowed to escape its warranty obligations by simply exchanging one problem for another.

### B.    *Plaintiff's Breach of Warranty Claims are not Preempted*

Viking's argument that the federal Energy Policy and Conservation Act ("ECPA") preempts Plaintiff's warranty claims (Motion at 14-16) is also without merit. Viking grossly misstates and mischaracterizes Plaintiff's claims. Contrary to Viking's argument, Plaintiff's warranty claims are *not* based upon the fact that the Refrigerators' energy consumption was different than what was stated on the Energy Efficiency Labels. Rather, as expressly alleged in Counts I and II of the Complaint, Plaintiff's breach of warranty claims arise solely from the fact that Viking knowingly sold defective, dripping refrigerators. *See* ¶¶ 21 ("Because the Refrigerators are designed in such a way that they drip water, the Refrigerators are not free from defects in material or workmanship under normal household use. Accordingly, Viking has violated its express warranties with respect to these Refrigerators."); 24 ("Because the Refrigerators are designed in such a way that they drip

---

of warranty claim at all. Moreover, the manufacturer in Thiedmann was able to fully repair the alleged defect (a malfunctioning gas gauge), so that the car was fully functional. *Id.* at 243-44. Here, as discussed immediately below, Viking merely switched one defect for another.

water, the Refrigerators are not fit for the ordinary purposes for which such goods are used. Accordingly, Viking has violated the implied warranty of merchantability . . . .").

In fact, the only significance of the Refrigerators' energy usage is that installation of the Heating Unit (the purported "fix" to the defect) causes Refrigerators to *exceed* altogether the maximum energy use standards promulgated by the federal government. ECPA is therefore irrelevant to this case, because ECPA at most preempts *only* warranty claims that are dependent upon a product's failure to meet the *specific* energy usage levels disclosed *on the Energy Efficiency Label*. 42 U.S.C. § 6297(g) ("Any disclosure with respect to energy use, energy efficiency, or estimated annual operating cost which is required to be made under the provisions of this part shall not create an express or implied warranty . . . .").[6]

Significantly, ECPA does not require the Energy Efficiency Label specifically to state that a Refrigerator complies with federal maximum energy use requirements, and does *not* preempt (or even address) claims relating to the Refrigerators' complete failure to function within those limits. Nonetheless, a consumer certainly has the right to expect that a Refrigerator is both fully functioning (*i.e.,* does not drip) *and* is not illegally sold in violation of United States law governing maximum energy usage (wholly apart from the truth of the specific energy use statements set forth on the unit's Energy Efficiency Label). Nothing in ECPA prevents a breach of warranty claim where that reasonable expectation is not met.

## V. CONCLUSION

As set forth above, Plaintiff has properly alleged that Viking has breached both its express warranty that the Refrigerator is "free from defects" and the implied warranty of merchantability.

---

[6] The reason for this policy is clear: as Viking acknowledges, energy efficiency labels are based upon highly specific, controlled testing procedures. *See* 10 C.F.R. Part 430; Motion at 13. A manufacturer cannot be expected to warrant that a refrigerator will actually perform in exactly the same manner for each consumer under all real-world conditions.

Accordingly, Plaintiff respectfully requests that the Court deny Viking's Motion in its entirety.

THIS, the 28th day of March, 2008.

                Respectfully submitted,

                BONNIE GEE, Plaintiff

                 */s/ Paul B. Watkins, Jr.*
                J. CAL MAYO, JR. (MB NO. 8492)
                POPE S. MALLETTE (MB NO. 9836)
                PAUL B. WATKINS, JR. (MB NO. 102348)
                *PLAINTIFF'S ATTORNEYS*

OF COUNSEL:

MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Tel: (662) 236-0055
Fax: (662) 236-0035


Seth R. Klein, Esq.
Jeffrey S. Nobel, Esq.
Mark P. Kindall, Esq.
SCHATZ NOBEL IZARD, P.C.
20 Church Street, Suite 1700
Hartford, Connecticut 06103
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

**CERTIFICATE OF SERVICE**

      I, Paul B. Watkins, Jr., one of the attorneys for Plaintiff, hereby certify that I electronically filed the foregoing Memorandum with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Brooks Eason, Esq.
*beason@bakerdonelson.com*

Eric Wynn Hospodor, Esq.
*ehospodor@bakerdonelson.com*

Scott Walker Pedigo, Esq.
*spedigo@bakerdonelson.com*

David P. Webb, Esq.
*dwebb@bakerdonelson.com*

THIS, the 28th day of March, 2008.

                                                      */s/ Paul B. Watkins, Jr.*
                                                      PAUL B. WATKINS, JR.